# CHARLESTON.

W. P. BEESON et als. v. DRAKE OIL COMPANY.

Submitted October 15, 1918.   Decided October 29, 1918.

MINES AND MINERALS—*Oil and Gas Lease—Contract to Sell Gas—Construction.*

Where a lessee under an oil lease contracts with another to sell him the gas produced from oil wells on the premises to be used in the manufacture of gasoline, he does not, in the absence of words indicating an intention to restrict his right to develop and exploit the oil field, debar himself from the use of such means for stimulating the flow of oil as science and experience have proved to be advantageous, even though as a result thereof the gas may lose some of its gasoline properties.

Error to Circuit Court, Wood County.

Action by W. P. Beeson and others against the Drake Oil Company.   Judgment for plaintiffs, and defendant brings error.

*Reversed, and judgment for defendant entered here.*

*Clyde B. Johnson, Kimball & Sugden, W. E. Sykes* and *Kreps, Russell & Hiteshew,* for plaintiff in error.

*F. P. Moats,* for defendants in error.

LYNCH, JUDGE:

The Drake Oil Company, a partnership, the predecessor in title of the defendant, Drake Oil Company, a corporation, none of whose stockholders were members of the partnership, owned and operated oil wells upon lands leased for oil and gas purposes, and on February 8, 1911, sold unto W. C. Patterson, Jr., the right to take, pipe and utilize gas from the oil wells and out of it manufacture gasoline on the leased premises, he to furnish at his expense the instrumentalities necessary and usual in the process of producing gasoline, and to pay to the owners of the wells a stipulated share of the profits derived from the business.   The partnership sold its wells and leases to Hyde and others who incorporated the Drake Oil Company, and plaintiffs, Beeson and others, ac-

quired from Patterson his rights under the contract, the buildings erected, machinery installed and pipe lines laid by him to convey the gas to the plant, and on May 17, 1913, began and continued to produce gasoline until May 30, 1916, when they abandoned the enterprise, wrecked the plant, sold its component parts and from it realized approximately one-fourth the original cost of the establishment. The abandonment and cessation of the business, plaintiffs allege in their declaration, necessarily resulted from defendant's installation and application of a patented process used to accelerate oil production from the wells by the forced injection of air at high pressure, whereby they further allege the vaporous properties of the gas were destroyed by absorption or combination with the air and thereby unfitted for use in the manufacture of gasoline, to their great financial loss and damage, wherefore they brought this action. The Drake Oil Company assigns as erroneous the action of the court in setting aside the verdict for defendant and in granting plaintiffs another trial.

Upon the date of the grant to Patterson and his assignment to the plaintiffs, and thereafter and during the operation of the gasoline manufacturing plant, the partnership and its successors, the corporation of the same name, continually prosecuted the business of producing oil from the leased premises. The continuation of the productive operation for oil contemporaneously with the operation of the gasoline manufacturing plant seems certainly to have been in the contemplation of the parties at the date of the contract. Such unity and continuity of operation, it may be said, was essential to the prosecution of the business enterprise pursued by the plaintiffs. The wells were drilled several years prior to the date of the Patterson contract, and though at first producing oil in large quantities, production later had materially diminished to such an extent, it appears, that their daily average then was about 2½ barrels for each of the nineteen wells, that average being maintained only by means of one or more vacuum pumps, a process commonly resorted to in order to stimulate the production of oil or gas, or both, in deteriorated or decadent wells. Such it is agreed and not denied was the

condition of the wells owned and controlled by the Drake Oil Company, the partnership, at the date of the contract involved and its assignment to the plaintiffs and during their ownership and exercise of the rights thereby conferred, until in lieu of the suction process defendant substituted the air compression process, a process more powerful and efficacious and more modern in invigorating and stimulating the oil production capacity of oil and gas wells. Such was the situation confronting the parties to this action and those through whom they acquired their respective rights at the time of their acquisition and before the installation and operation of the substituted process.

If, as plaintiffs claim, the relation of landlord and tenant was established by the Patterson contract and remained until interrupted by the acts complained of, nevertheless the circumstances detailed clearly indicate that the rights said to have unlawfully been impaired were subordinate to the rights of the defendant to extract oil from the premises which it owned and controlled through wells thereon, without liability, unless they wilfully interrupted or destroyed the subordinate rights and privileges of the plaintiffs. Wrongfulness and willfulness are the charges preferred by the declaration, but the proof in support of averments in this respect falls far short of establishing as true the facts so averred. On the contrary, defendant through its chief officers offered to purchase plaintiff's plant before the installation of the air compressor apparatus, an offer which plaintiffs declined to accept, because, they say, it was inadequate to compensate them for the outlay and expense of the plant, and in lieu thereof they later elected to dismantle, junk and dispose of it for an amount in excess of the offer. The offer, though inadequate, is significant only as tending to negative an intentional injury to the plaintiffs; at least not to warrant the conclusion of the existence of sinister motives prompting the action and conduct of the defendant's officers and agents.

Before the installation of the air compressor plant the suction of the pumps used under the old process had ceased to be effective in stimulating the productive capacity of the wells, and though the effect of the former upon the gasoline proper-

ties of the gas is doubtfully questionable, as we shall later see, certainly according to the proof the quantity and volume of the gas was increased commensurately and correspondingly with the increased production of oil due to the substituted process. Obviously the difficulty thereafter confronting plaintiffs in the manufacture of gasoline was the want of a plant large enough and powerful enough to meet the changed conditions brought about by the new situation.

The proposition that the injection of air into oil and gas producing wells renders gas flowing therefrom unfit for the manufacture of gasoline is not established clearly by the proof addressed to that subject. The weight of the evidence shows the fact to be otherwise. Although the latter instance necessitates the use of a higher degree of power to solve the manufacturing problems so presented, operators skilled in the oil and gas business, and incidentally in the production of gasoline, testifying in the case and basing their opinions upon their own personal experience, frankly, fairly and unequivocally declare that the commingling of air with gas in an oil and gas well under pressure to promote the production of oil therefrom does not rob the gas of its gasoline qualities, but does require a more powerful compressive force to separate the lighter or vaporous element from the gas so burdened with air. Indeed, there seems to be a general concurrence of evidential opinion among the witnesses on this subject. Evidence to the contrary is slight and inconclusive.

Equally without merit is plaintiffs' contention, the one upon which they chiefly rely, that under the contract by which defendant sold to them all the gas produced from the oil wells on the leased premises, he may not now interfere with the supply or quality of such gas by the change of processes from suction to compressed air. The pertinent part of the agreement between plaintiffs and defendant is: "The said Drake Oil Co. by these presents does sell, assign and transfer to said Patterson, his heirs and assigns, all gas produced from the oil wells now owned by the said Drake Oil Co. on the leases hereafter described, and all gas produced from wells which said Drake Oil Co. may hereafter drill thereon, reserving, however, to said Drake Oil Co. enough

gas to run the engines which it now has upon said leases and such other engines as it from time to time may see fit to install or operate on said leases."

It evidently was the purpose and intention of the parties to the agreement that plaintiffs should become the purchaser of the gas produced merely as an incident of oil production. They did not deal with the wells as the subject matter of the contract but with the gas emanating from them. The ownership of the wells was not transferred to Patterson. Nothing in the agreement indicates that the right to use the gas was regarded otherwise than as incidental and subordinate to the development for oil. It cannot be assumed that defendant or its grantors intended to waive any right they possessed to use reasonably appropriate means or methods to stimulate the flow of oil, and the contract contains no language which expressly or by implication constitutes such a waiver. Indeed, it was a duty which defendant owed to his lessor to use all reasonable means to maintain the flow of oil. That duty existed before the date of the contract under which plaintiffs claim, wherefore their rights necessarily are subordinate thereto. Hence where a lessee under an oil lease contracts with another to sell him for gasoline purposes all gas produced from oil wells on the leased premises, he does not, in the absence of words indicating an intention to restrict his right to develop and exploit the oil field, debar himself from the use of such means as science and experience have proved to be advantageous, even though as a result thereof the gas may lose some of its gasoline properties.

What has been said sufficiently disposes of the question whether the contract on which plaintiffs rely had or had not terminated because of their inability to operate their plant at a profit, the contract providing that it should continue "so long as said Patterson out of the gas is able to manufacture gasoline in paying quantities."

Judgment below reversed, and judgment for defendant entered here on the verdict.

*Reversed, and judgment for defendant entered here.*